# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>                 Plaintiff, <br> vs. <br> MARIO CASTRO-MONTIJO (2), <br>                 Defendant. | CASE NO. 14CR1234 WQH <br><br> ORDER |

HAYES, Judge:

    The matter before the Court is the motion to suppress post arrest statements and suppress statements because they were involuntary filed the Defendant Mario Castro-Montijo. (ECF No. 19)

## BACKGROUND

    On April 2, 2014, Defendant was arrested at a Burger King based upon information provided to law enforcement earlier that day from an individual arrested bringing methamphetamine into the United States at the San Ysidro Port of Entry. At approximately 12:15 p.m., Agent Torres and Agent Cramer interviewed the Defendant at the Homeland Security office at the Port of Entry. The interview was videotaped. Initially, Agent Torres advised Defendant that he was detained for conspiracy and for bringing in drugs into the United States. Agent Torres advised Defendant of his *Miranda* rights in the Spanish language and provided Defendant with a waiver form in the Spanish language. Agent Torres spoke to Defendant in the Spanish language. Agent Cramer spoke in the English language with Agent Torres translating to the

1   Spanish language. The interview began as follows:

2   **Agent Torres:** Before asking you any question, it's my duty to inform you about your rights, sir. You have the right to remain silent, anything you
3   say can be used against you in a court of justice or in another legal process. You have the right to consult with an attorney before making any
4   statement or answering any question. You have the right for an attorney to be present during questioning. If you can't pay an attorney, one will be
5   appointed before any questioning, if you wish. If you decide to answer the questions now, you still have the right to stop the questioning at any time
6   or to stop the questioning to consult with an attorney. Do you understand? Do you understand?
7   **Defendant:** Yes, yes, yes.
    **Agent Torres:** Alright then. Are you willing to answer my questions?
8   **Defendant:** Yes, sir, well ...
    **Agent Torres:** Alright then.
9   **Defendant:** ... the questions.
    **Agent Torres:** Read this aloud, sign ... I mean, name sign and date this
10  please
    **Defendant:** I didn't understand very well before.
11  **Agent Torres:** Aloud, old man, please.
    **Defendant:** I have read or ... I have read or someone has read this
12  statement of rights to me. And when would they appoint the attorney for me?
13  **Agent Torres**: Look, this is how things work.
    **Defendant:** Uh-huh.
14  **Agent Torres:** When you understand, your rights that I explained right now like ... and if you want I can read them again to you.
15  **Defendant:** Mm-hm.
    **Agent Torres:** Oh, we can't talk to you if you say: "I want an attorney
16  right now," the attorneys aren't going to come right now, [that's] the truth.
    **Defendant:** Mm-hm.
17  **Agent Torres:** The thing is ... you will be appointed one, right?
    **Defendant:** Mm-hm.
18  **Agent Torres:** For free, in court. But what happens is that a lot of people are confused, they say: "Listen, well I want my attorney," in the future but
19  a lot of people th-think that the attorney is going to come right now. The attorney is not going to come right now.
20  **Defendant:** Mm-hm.
    **Agent Torres:** If you say to me: "You know what? I want an attorney,
21  that-that tells me that I can't ask you questions, nor can you with-nor can you- nor can you answer uh - the questions, right?
22  **Defendant:** Uh-uh.
    **Agent Torres:** But if you say: "You know what? Go ahead. I'll answer the
23  questions without the presence of an attorney, then we'll go forward with the questions.
24  **Defendant:** Uh-huh. Is it quicker?
    **Agent Torres:** No, I can't say to you quicker. It's a right. If you say:
25  "You know what? No, I don't prefer that question-I prefer not to answer it," or you don't want to give me names and everything, I respect that. But
26  before moving to the-questioning and the questions, I need to know if you're willing to answer my questions today. You decide. Are you willing
27  to answer my questions?
    **Agent Cramer:** Can I explain something to him?
28  **Defendant:** Yes, alright then. ...
    **Agent Cramer:** Uh in this statement right here, it basically says...

|   |   |
|---|---|
| 1 | **Agent Torres:** In this statement, what it really says is that... |
|   | **Agent Cramer:** ...and you don't want to answer it... |
| 2 | **Agent Torres:** If I have a question and you prefer not to answer it... |
|   | **Agent Cramer:** we'll skip it and I'm not gonna hold that against you, we'll skip it. |
| 3 | **Agent Torres:** ...and we'll go down another, if we don't ask you and ... |
| 4 | **Agent Cramer:** If I get to a point where I ask you enough questions, and you're like "Hey, you know, I don't wanna talk." |
| 5 | **Agent Torres:** If you come to a point of saying: "You know what? You're asking me a lot of questions, I don't want to talk anymore." |
| 6 | **Agent Cramer:** I'm not gonna hold that against you either. |
|   | **Agent Torres:** I'm not gonna hold that against you either. |
| 7 | **Agent Cramer:** We can be done at any time. |
|   | **Agent Torres:** We can finish and it's over. |
| 8 | **Agent Cramer:** This just starts it so that we can ask you a few questions and you- |
| 9 | **Agent Torres:** This just, uh tells us and allows us, uh- to ask- start the questions with you. |
| 10 | **Agent Cramer:** And you can ask. It can be a conversation a dialogue. |
|   | **Agent Torres:** It's like a conversation.[1] |
| 11 | **Agent Cramer:** OK? That-this is just a start. |
|   | **Agent Torres:** That's for - |
| 12 | **Defendant:** But, isn't that bad for me? |
| 13 | **Agent Torres:** It isn't ba-it isn't bad for you, no.  It's not gonna jeopardize me at all.  So, are you willing to answer my questions? |
|   | **Defendant:** Yes, man.  I was just going to make that comment. |
| 14 | **Agent Torres:** OK.  Put-read it aloud, name and signature |
| 15 | **Defendant:** It says: "I have read or someone has read this statement of my rights to me.  I understand what my rights are.  At this time I am willing to answer all .. without- without an attorney." |
| 16 | **Agent Torres:** Do you understand? |
|   | **Defendant:** Is it the same thing here? |
| 17 | **Agent Torres:** No, this is just one.  Do you understand? |
|   | **Defendant**: Yes. |
| 18 | **Agent Torres:** Name, signature and date. |

ECF No. 3401 at 6-10. Defendant signed and dated the waiver form in the Spanish language. Defendant's Exhibit A.

On July 1, 2014, this Court held an evidentiary hearing. Agent Torres testified that he interviewed the Defendant along with Agent Cramer at an office at the San Ysidro Port of Entry. Agent Torres stated that he is fluent in the Spanish language, that Spanish is his first language, and that he was raised speaking Spanish. Agent Torres stated that he read the Defendant his *Miranda*[2] rights prior to questioning, that the Defendant stated that he understood his rights, and that Defendant agreed to answer

---

[1] The Court accepts Defendant's objections. (ECF No. 39).

[2] *Miranda v. Arizona*, 396 U.S. 868 (1969).

1  questions. Agent Torres stated that Defendant raised the issue of when he would be
2  appoint counsel if he asked for counsel prior to questioning and that he responded to
3  Defendant's question. Agent Torres explained that Agent Cramer explained to
4  Defendant that he would not have to answer any question that he preferred not to
5  answer and that he could stop answering questions at any point. Agent Torres testified
6  that Defendant inquired: "Isn't that bad for me?" and that he responded "it isn't bad for
7  you" referring to whether Defendant could stop the questioning at any time he choose.
8  Agent Torres stated that the Defendant stated that he was willing to answer questions
9  and signed the waiver of rights.

## CONTENTIONS OF THE PARTIES

11  Defendant moves to suppress his statements on the grounds that the agents failed
12 to adequately explain his *Miranda* rights or failed to obtain a valid waiver of those
13 rights. Defendant asserts that comments made in response to Defendant's question
14 about having a lawyer present, downplayed, undercut, and confused the significance of
15 Defendant's rights. Defendant asserts that Agent Torres told him that it would not be
16 bad for him to answer questions instead of telling him that anything that he said could
17 be used against him. Defendant asserts that he was confused about the role of the
18 agents and did not voluntarily waive his *Miranda* rights. Finally, Defendant contends
19 that his statements were involuntary and a product of coercion.

20  The Government contends that the *Miranda* warnings were adequate; that
21 Defendant stated that he wanted to answer questions; and that the waiver was knowing,
22 voluntary, and intelligent. The Government asserts that Agent Torres accurately
23 informed the Defendant he would not get counsel that day and that it would not be bad
24 for him in the event that he choose to stop answering questions at any time during the
25 interview.

## RULING OF THE COURT

**Miranda**

28  "For inculpatory statements made by a defendant during custodial interrogation

1  to be admissible in evidence, the defendant's waiver of Miranda rights must be
2  voluntary, knowing, and intelligent." *United States v. Garibay,* 143 F.3d 534, 536 (9th
3  Cir. 998)(internal quotation omitted).  "Only if the totality of the circumstances
4  surrounding the interrogation reveal both an uncoerced choice and the requisite level
5  of comprehension may a court properly conclude that the *Miranda* rights have been
6  waived. " *Moran v. Burdine*, 475 U.S. 412, 421 (1986)(internal quotation omitted).

7  There is a presumption against waiver which the Government bears the burden
8  of overcoming by a preponderance of evidence. *Garibay,* 143 F.3d at 536.  The validity
9  of a waiver depends upon the particular facts and circumstances of the case, including
10 the background, experience and conduct of the defendant. *See Edwards v. Arizona*, 451
11 U.S. 477, 482 (1981). "Several factors to consider are (I) defendant's mental capacity;
12 (ii) whether the defendant signed a written waiver; (iii) whether the defendant was
13 advised in his native tongue or had a translator; (iv)  whether the defendant appeared
14 to understand his rights; (v) whether the defendant's rights were individually and
15 repeatedly explained to him; and (vi) whether the defendant had prior experience with
16 the criminal justice system." *United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir.
17 2007).

18 In this case, Defendant did not lack mental capacity.  Defendant was advised of
19 his rights and interviewed in his native tongue and/or had a qualified translator.  The
20 transcript shows that Agent Torres read the Defendant his rights under *Miranda*.
21 Agent Torres asked the Defendant "Are you willing to answer my questions?"
22 Defendant answered "Yes sir, well."  Agent Torres asked the Defendant to read aloud
23 and sign the waiver form and Defendant stated "I didn't understand very well before."
24 Defendant began to read the waiver form and asked "when would they appoint the
25 attorney for me?"  Agent Torres then stated "I can read them again to you."  Agent
26 Torres responded directly to the Defendant's question "when would they appoint the
27 attorney for me" and stated "we can't talk to you if you say: 'I want an attorney right
28 now'"; "the attorney's aren't going to come right now"; "You will be appointed one";

"for free in court"; "The attorney is not going to come right now." (ECF No. 43-1 at 7). The Court concludes that the agent informed the Defendant of his right to an attorney. The agent accurately stated that Defendant would be appointed an attorney in court and that the attorney would not come right now.

After offering to read the rights again, the agents explained to Defendant that he could choose not to answer any question "if you prefer not to answer it" or could choose to say "I don't want to talk anymore." *Id.* at 8-9. The agents stated "I am not going to hold that against you." Defendant asked "isn't that bad for me." The Court finds that the transcript supports the testimony of Agent Torres that the answer that Agent Torres gave to the Defendant ("it isn't bad for you no") referred to whether it would be bad for Defendant to decide to stop the questioning. The transcript shows that Defendant's question and Agent Torres statement came directly from the discussion of stopping the interview and not in reference to any advice from Agent Torres about whether to waive his right to remain silent.

Agent Torres stated "So are you willing to answer my questions?" Defendant stated "Yes"; and read aloud the waiver statement which concluded "At this time I am willing to answer all [] without an attorney." Agent Torres stated "Do you understand?" Defendant answered "Yes", signed and dated the waiver form and the questioning began. Based upon the video[3] and the transcript of the interview and the testimony of the agent, the Court finds by a preponderance of the evidence that the Government has carried its burden to show that Defendant was informed of his *Miranda* rights, that Defendant indicated that he understood, and that Defendant waived those rights. The video of the interview and the transcript of the interview show that Defendant asked questions, and received accurate answers from the agent. There is no evidence that Defendant was misinformed. When Defendant indicated that he did not understand, the agent explained his rights further and offered to read them to him again. Defendant

---

[3] The video shows Defendant seated at a table with the two agents seated opposite the Defendant. Defendant is eating a hamburger and appears comfortable. No voices are raised.

1  read aloud the waiver in this native language, stated that he understood, and signed and
2  dated the waiver prior to questioning.  The Court finds by a preponderance of the
3  evidence that Defendant's waiver was voluntary, knowing and intelligent.

4  **Voluntariness**

5  "In evaluating voluntariness, the test is whether, considering the totality of the
6  circumstances, the government obtained the statement by physical or psychological
7  coercion or by improper inducement so that the suspect's will was overborne." *United*
8  *States v. Male Juvenile*, 280 F.3d 1008, 1022 (9th Cir.2002)(internal quotations
9  omitted).  There are no facts from which to conclude that the Defendant's will was
10  overborne by intimidation, coercion, or deception. The demeanor of the agents was
11  calm.  No threats or false promises of any kind were made.  There is no indication that
12  the Defendant asked to terminate the questioning.

13  IT IS HEREBY ORDERED that motion to suppress post arrest statements and
14  suppress statements because they were involuntary filed the Defendant Mario Castro-
15  Montijo  (ECF No. 19) is denied.

16  DATED: July 22, 2014

17  
18  **WILLIAM Q. HAYES**
    United States District Judge